IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JACQUELINE MEDFORD, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No.  3:18-CV-3421-BH |
| § | |
| ANDREW M. SAUL, § | |
| COMMISSIONER OF THE SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
| § | |
| Defendant. § | Consent Case[1] |

**MEMORANDUM OPINION AND ORDER**

Based on the relevant findings, evidence, and applicable law, the Commissioner's decision is **AFFIRMED**.

**I.  BACKGROUND**

Jacqueline Medford (Plaintiff) seeks judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner)[2] denying her claim for a period of disabled widow's benefits under Title II of the Social Security Act (Act), and for supplemental security income (SSI) under Title XVI of the Act. (doc. 1.)

**A.   Procedural History**

On November 24, 2015, Plaintiff filed her application for SSI and disability insurance

---

[1] By consent of the parties and the order of transfer dated February 22, 2019 (doc. 16), this case has been transferred for the conduct of all further proceedings and the entry of judgment.

[2] At the time this appeal was filed, Nancy A. Berryhill was the Acting Commissioner of the Social Security Administration, but Andrew Saul became the Commissioner of the Social Security Administration on June 17, 2019, so he is automatically substituted as a party under Fed. R. Civ. P. 25(d).

benefits (DIB), alleging disability beginning on November 18, 2015. (doc. 15-1 at 210, 214.)[3] Her claim was denied initially on January 20, 2016, and upon reconsideration on April 19, 2016. (*Id.* at 77, 86, 99-110, 111-118.) On June 9, 2016, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (*Id.* at 151-53.) She and a vocational expert (VE) appeared and testified at a hearing on June 12, 2017, before the ALJ. (*Id.* at 42-56.) On October 18, 2017, the ALJ issued a decision finding her not disabled and denying her claims for benefits. (*Id.* at 21-34.)

Plaintiff appealed the ALJ's decision to the Appeals Council on November 28, 2017. (*Id.* at 207-08.) It denied her request for review on August 31, 2018, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 5,10.) Plaintiff timely appealed the Commissioner's decision under 42 U.S.C. § 405(g). (*See* doc. 1.)

**B.      Factual History**

        1.      **Age, Education, and Work Experience**

Plaintiff was born on July 20, 1962, and was 54 years old at the time of the initial hearing. (*See* doc. 12-1 at 206.) She had a tenth grade education and past work experience as cashier. (*Id.* at 43-44.)

        2.      **Medical Evidence**

On October 6, 2015, Plaintiff saw Jerry Davis, M.D. (Dr. Davis), for a pain management follow-up. (*Id.* at 337-78.) She reported chronic low back pain, bilateral hand pain, weight loss, muscle weakness, and arthralgias/joint pain (both hands). (*Id.* at 338.) She experienced severe pain, had difficulty opening bottles with her right hand, was unable to stand or walk without pain, could not bend her right ring and middle finger, and used a cane to help her walk. (*Id.*) Lyrica helped with

---

[3] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

2

her symptoms, but she wasn't able to afford the medication. (*See id*.) Examination revealed limited ambulation and required use of a cane to assist with walking. (*Id*. at 339.) Plaintiff had normal motor strength and tone, limited range of motion of both hands "with DJD changes of MCP and PIP left > right," and tenderness of the lumbar spine form L1-5. (*Id*. at 337.) She had a ganglion cyst on her left wrist and multiple trigger points of arms, legs, thighs, chest, and shoulders. (*Id*.) She was assessed with hypertension, bilateral osteoarthritis, lumbosacral radiculitis, and fibromyalgia. (*Id*.)

In May 2016, Plaintiff presented to the emergency room at Methodist Dallas Medical Center (Methodist) for pain in her arm, left hand, neck, left shoulder, knee, and hip, that had been on and off for months. (*Id*. at 695.) She also reported chronic back pain, and arthritis in her spine and hands. (*Id*. 695, 698.) Examination revealed "FROM, 2+ upper and lower extremity pulses," ambulation with ease, and normal range of motion in her other extremities. (*Id*. at 698.) She was discharged with instructions to take her medications as prescribed and to follow up with her doctor. (*Id*. at 699.) Approximately one week later, Plaintiff returned to the emergency room for moderate sharp centralized chest pain with nausea and hand pain that was intermittent and lasted for a few seconds. (*Id*. at 670.) She reported bilateral wrist pain that was worse on the left. (*Id.*) Examination revealed bilateral wrist tenderness to palpation that was greater on the left, and no back tenderness. (*Id*. at 674.) She was prescribed Ibuprofen, and discharged with instructions to follow up with her primary care physician or to return to the emergency room for new or worsening symptoms. (*Id*. at 676.)

In May 2016, Dr. Davis completed a carpal tunnel residual functional capacity (RFC) questionnaire. (*Id*. at 663-65.) He noted that Plaintiff had chronic pain, tenderness, sensory changes, impaired sleep, swelling, reduced grip strength, and she dropped things. (*Id*. at 663.) He opined that in a competitive work situation she could rarely carry less than 10 pounds, and never carry above

3

10 pounds. (*Id*. at 664.) He noted that she had significant limitations with reaching, handling and fingering, and he opined that she could grasp, turn or twist objects only 10 percent of the time in an eight-hour day, use fingers for fine manipulations only 10 percent of the time, and not reach at all. (*Id*. at 664-65.) He also noted that Plaintiff experienced referred pain that caused a limited range of motion, and found that her impairments were expected to last at least months. (*Id*. at 663.) He opined that she was incapable of even "low stress" jobs. (*Id*. at 664.)

On June 27, 2016, Plaintiff presented to the Methodist emergency room for pain in both hands. (*Id*. at 734.) She reported chronic hand pain that was exacerbated by rotation with no known alleviating factors, and swelling of her left hand. (*Id*.) Examination revealed normal range of motion in her neck and her back, mild swelling at the second metacarpal of her left hand, limited range of motion in finger secondary to pain, grips strong and equal, and "strength 5/5 to bilateral upper and lower extremities." (*Id*. at 738.) X-rays taken of Plaintiff's left hand revealed arthritic changes to her proximal third interphalangeal joint, narrowing of the radiocarpal joint, positive ulnar variance, and minimal degenerative changes to her first carpometacarpal joint. (*Id*. at 748.) No acute fractures were seen, and there appeared to be soft tissue swelling at the proximal second and third digits. (*Id*.) X-rays of her right hand showed positive ulnar variance; the carpal row was well aligned, no bone erosion was seen, and no significant soft tissue swelling was evident. (*Id*. at 750.) Plaintiff was prescribed Naproxen. (*Id*. at 739.)

From July 2016 through November 2016, Plaintiff saw Dr. Davis for three follow up examinations. (*Id*. at 709, 722, 726.) She reported headaches, left hand pain, back pain, left side abdominal pain, and chronic back pain that radiated down to her buttocks and legs. (*Id*. at 709-10, 722-24, 726-27.) Her pain was aggravated by movement/positioning and was alleviated by rest. (*Id*

at 710, 723, 727.) She was not taking medications as directed because she ran out. (*See id*.) She was still experiencing severe pain in both hands, had tenosynovitis of her fingers of her right hand, and had difficulty opening bottles. (*Id*. at 710, 723, 727.) She used a cane to assist with walking and had fallen in May of 2014. (*Id*.) She had a heel spur, worsening back pain, severe pain in her right buttock, and was unable to stand or walk without pain. (*Id*.) Plaintiff also reported that Lyrica helped with her symptoms. (*Id*.) Examination revealed limited ambulation with a cane, FROM in neck, abnormal motor strength, limited "ROM (of both hands with DJD change of MCP and PIP left > right)," bony deformity, tenderness of lumbar spine, and a ganglion cyst in her left wrist. (*Id*.) Plaintiff was assessed with chronic neck and back pain, bilateral osteoarthritis, obesity, achilles tendinitis in her right leg, and fibromyalgia. (*Id*. at 709, 722, 726.) She was instructed to return for a recheck "20 at DIMA." (*Id*. at 726.)

On August 3, 2016, Dr. Davis completed a physical RFC questionnaire. (*Id*. at 666-68.) He opined that Plaintiff could sit for four to five hours in an eight-hour day, stand/walk for one hour in an eight-hour day, and lie down/ recline for three hours. (*Id*. at 666.) She could only sit for 20 minutes at a time, and stand for 10 minutes, without needing to change position, and she had limitations due to pain in her back and legs. (*Id*.) Dr. Davis also opined that forcing her to alternate between standing and sitting in one area without being allowed to "walk it off" would not adequately accommodate her pain, and that she would need breaks of 20 to 30 minutes before being able to return to work. (*Id*. at 667.) He opined that Plaintiff could occasionally carry up to but never more than 10 pounds, never reach in all directions, and occasionally handle objects and finger. (*Id*.) He found that her degree of pain on average was severe, she would be off task due to pain and other symptoms for over 15 minutes per hour, she would frequently need unscheduled breaks, and she

5

would probably miss four or more days of work a month due to exacerbation of pain or symptoms. (*Id.* at 754-55.)

On April 3, 2017, Dr. Davis completed a second physical RFC questionnaire. (*Id.* at 753-55.) He opined that Plaintiff could sit for two hours in an eight-hour day, stand/walk for two hours in an eight-hour day, and lie down/recline for four hours. (*Id.* at 753.) She could only sit for 10 minutes at a time, and stand for five minutes, without needing to change position. (*Id.*) She had limitations due to pain in her back and legs; forcing her to alternate between standing and sitting in one area without being allowed to "walk it off" would not adequately accommodate her pain, and she would need breaks of 15 minutes to leave the immediate area before being able to return to work. (*Id.* at 754.) She could occasionally carry up to but never more than 10 pounds due to her pain and weakness of her hand; occasionally reach in all directions; and frequently handle objects and finger. (*Id.*) Plaintiff would be off task due to pain and other symptoms for over 15 minutes per hour, frequently need unscheduled breaks, and probably miss four or more days of work a month due to exacerbation of pain or symptoms. (*Id.* at 755.) Dr. Davis noted that Plaintiff was unable to handle milk and sugar at home "without dropping object both hands," and opined that her limitations became disabling in 2012. (*Id.*)

On May 10, 2017, Plaintiff presented to the Methodist emergency room for right wrist pain. (*Id.* at 763.) She reported that movement exacerbated the pain, and the pain medication she was taking was not alleviating her symptoms. (*Id.*) Her right wrist was tender to palpation medially over distal radius extending to mid forearm, with a positive Finkelstein's test and a negative Tinel's Sign and Phalen's Maneuver. (*Id.* at 764.) Her grips were strong and equal, and her strength was 5/5 to bilateral upper and lower extremities. (*Id.*) She was diagnosed with De Quervain's tenosynovitist,

given a Toradol injection, and a prescription for Medrol and Tramadol. (*Id.* at 765-66.)

### 3. Hearing

On June 12, 2017, Plaintiff and a VE testified at a hearing before the ALJ. (*Id.* at 42-56.) Plaintiff was represented by an attorney. (*Id.* at 42.)

#### a. Plaintiff's Testimony

Plaintiff testified that she was widowed, had no children under 18, and could not drive. (*Id.* at 43-43.) She could not read well or do basic math. (*Id.* at 47.) She had De Quervain's in both wrists, and although doctors suggested surgery, she could not afford it. (*Id.* at 43,45.) She also had had fibromyalgia and arthritis in her knees, shoulders, hand, and right arm. (*Id.* at 46,49.) She took medication that helped her deal with the pain. (*Id.* at 46-47.) Her pain was constant, and she had difficultly walking and standing and could only stand for about five to ten minutes before needing to sit down. (*Id.* at 50.) She used a cane to walk everyday, even in the house, and could not climb a flight of stairs. (*Id.* at 47, 50.) She also had difficulty sitting and could only sit for about five to ten minutes before needing to get up and move around. (*Id.* at 50.)

Plaintiff testified that she could not bend at the waist to pick things up without experiencing pain. (*Id.* at 51.) She could not reach overhead and had trouble reaching out in front of her. (*Id.* at 51.) She experienced pain and numbness in her hands, dropped things, and could not push or pull. (*See id.* at 51.)

Plaintiff had gone to the emergency room for pain in her right shoulder and in her neck, and for a pinched nerve that caused pain in her left shoulder. (*Id.* at 47-48.) The pain from her neck would shoot up the side of her head but she had not had any injections for this issue. (*See id.* at 48.) She had also gone to the emergency room for chest pain and was given medication that must be

taken three times a day. (*Id*. at 48-49.) She was also regularly taking blood pressure medication, but at times was noncompliant because she couldn't afford it. (*See id*. at 46, 49.)

### b. VE's Testimony

Plaintiff did not have any past relevant work experience. (*Id*. at 53.) The VE considered a hypothetical individual with the same age, education, and experience as Plaintiff, but this individual could lift only 20 pounds occasionally or 10 pounds frequently; could stand or walk for six hours in an eight-hour day or sit for six hours in an eight-hour day; would have to avoid ropes, with no scaffolds, climbing, ladders, and crawling; could do postural activities only occasionally; and should avoid vibration. (*Id*.) The VE testified that the hypothetical individual could perform work as a cleaner (light, SVP 2), dictionary of occupational titles (DOT) 323.687-014, with 328,000 jobs nationally and 19,000 in Texas; work as an assembler (light, SVP 2), DOT 706.684-022, with 500,000 jobs nationally and 27,000 jobs in Texas; and work as a laundry folder (light SVP 2), DOT 369.687-018, with 165,000 jobs nationally and with 1,500 jobs in Texas. (*Id*. at 54.)

The VE considered a second hypothetical individual with the same limitations but whose ability to handle and finger would be dropped down to a frequent level instead of a constant level. (*Id*.) The VE testified that this individual would still be able to perform the same jobs listed for the first hypothetical. (*Id*.) The VE next considered a third hypothetical who was limited to occasional handling and fingering. (*Id*.) This individual would not be able to perform any of the past jobs or any other jobs because she would not be competitive. (*Id*. at 55.)

In response to questioning by Plaintiff's attorney the VE testified that if the hypothetical individual would be off-task for 15 minutes per hour, that individual would not be able to engage in the jobs of cleaner, assembler or laundry folder. (*Id*. at 55.) The VE also testified that if the

8

hypothetical individual missed four or more days a month, that individual would not be able to engage in the jobs of cleaner, assembler, and laundry folder because "it's too great." (*Id*.)

C. **ALJ's Findings**

The ALJ issued his decision denying benefits on October 28, 2017. (*Id*. at 21-34.) At step one, he found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (*Id.* at 23.) At step two, the ALJ found that Plaintiff had the following severe impairments: osteoarthritis of the hands, obesity, hypertension, fibromyalgia, lumbar degenerative disc disease, and carpal tunnel syndrome. (*Id*.) Despite these impairments, at step three, he found that since the alleged onset date of disability, November 18, 2015, Plaintiff had no impairments or combination of impairments that met or equaled the severity of one of the impairments listed in the social security regulations. (*Id.* at 26.)

Next, the ALJ determined that Plaintiff retained the RFC to lift 20 pounds occasionally or 10 pounds frequently, stand or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. (*Id.* at 24.) She would have to avoid ropes, with no scaffolds, no climbing, no ladders, no crawling, do postural activities only occasionally, and avoid vibration. (*Id*. at 27.) Her ability to handle and finger was at the frequent and not constant level. (*Id*.) At step four, the ALJ noted that Plaintiff had no past relevant work experience. (*Id.* at 32.) At step five, the ALJ found that considering her age, education, work experience, and RFC, there were no jobs that exist in significant numbers in the national economy that she could perform. (*Id*. at 33.) The ALJ found that Plaintiff was not disabled prior to July 19, 2017, but became disabled on that date, and continued to be disabled through the date of his decision. (*Id*. at 33.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined by the Social Security Act, on November 24,

9

2015, the alleged onset date. (*Id.* at 33-34.)

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3).[4] Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v.*

---

[4]The scope of judicial review of a decision under either the supplemental security income program or the social security disability program is the same. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). The relevant law and regulations governing the determination of claims under either program are also identical, so courts may rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id.*

*Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis.

11

*Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### III.  TREATING PHYSICIAN

Plaintiff presents one issue for review:

1. Whether the ALJ erred by failing to conduct a proper evaluation of the August 3, 2016, and April 3, 2017, medical opinions of Dr. Davis, a treating physician.

(doc. 27 at 4, 11.)

The Commissioner is entrusted to make determinations regarding disability, including weighing inconsistent evidence. 20 C.F.R. § 404.1529(b). Every medical opinion is evaluated regardless of its source, but the Commissioner generally gives greater weight to opinions from a treating source. *Id*. §§ 404.1527(c)(2), 416.927(c)(2).[5] A treating source is a claimant's "physician, psychologist, or other acceptable medical source" who provides or has provided a claimant with medical treatment or evaluation, and who has or has had an ongoing treatment relationship with the claimant. *Id*. § 404.1502. When "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," the Commissioner must give such an opinion controlling weight. *Id*. §§ 404.1527(c)(2), 416.927(c)(2). If controlling weight is not given to a treating source's opinion, the Commissioner considers six factors in deciding the weight given to each medical opinion: (1) whether the source examined the claimant or not; (2) whether the source treated the claimant; (3) the medical signs and laboratory findings that

---

[5] On January 18, 2017, the Administration updated the rules on the evaluation of medical evidence. *See* 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017). For claims filed on or after March 27, 2017, the rule that treating sources be given controlling weight was eliminated. *See Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018) (citing 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)"). Because Plaintiff filed her application before the effective date, the pre-2017 regulations apply.

support the given opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is made by a specialist or non-specialist; and (6) any other factor which "tend[s] to support or contradict the opinion." *See id*. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

While an ALJ should afford considerable weight to opinions and diagnoses of treating physicians when determining disability, sole responsibility for this determination rests with the ALJ. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). If evidence supports a contrary conclusion, an opinion of any physician may be rejected. *Id*. A treating physician's opinion may also be given little or no weight when good cause exists, such as "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id*. at 455-56. Nevertheless, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in [then] 20 C.F.R. § 404.1527(d)(2)." *Id*. at 453. A detailed analysis is unnecessary, however, when "there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another," or when the ALJ has weighed "the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id*. at 458.

Here, Dr. Davis also completed a "check-the-box" physical RFC questionnaire in August 2016. (*Id*. at 666-68.) He opined that Plaintiff could sit for 20 minutes and stand for 10 minutes at a time without needing to change positions, would need to alternate between sitting and standing at will, and would need 20 to 30 minutes to leave the immediate area or "walk it off." (*Id*. at 666-67.)

13

He opined that Plaintiff could occasionally carry up to but never more than 10 pounds, never reach, and occasionally handle objects or finger. (*Id*. at 667.) He also opined that her degree of pain was severe, she would be off tasks for 15 minutes or more per hour, would frequently need to take unscheduled breaks, and would probably miss 4 or more days of work per month. (*Id*. at 667-68.)

Dr. Davis also completed a second "check-the-box" physical RFC questionnaire in April 2017. (*Id*. at 753-55.) He opined that Plaintiff could sit for 10 minutes and stand for five minutes at a time without needing to change positions, would need to alternate between sitting and standing at will, and would need 15 minutes to leave the immediate area or "walk it off." (*Id*. at 753-54.) He also opined that she could occasionally carry up to but never more than10 pounds, could occasionally reach, and could frequently handle objects or finger. (*Id.*) He opined that her degree of pain was severe, and she would be off task for 15 minutes or more per hour due to pain, would frequently need to take unscheduled breaks, and would probably miss four or more days of work per month. (*Id*. at 754-55.) He determined that these limitations became disabling in 2012. (*Id*. at 755.)

The ALJ considered Dr. Davis's opinions and determined that they were entitled to only "partial weight." (*Id*. at 31.) He noted that they were partially consistent with treatment notes showing that Plaintiff had limited range of motion in both hands, tenderness in her lumbar spine, and multiple trigger points, but were not consistent with objective findings from her emergency room visits. (*Id*.) Emergency room visits noted that her grip strength was strong and equal and she had five out of five strength in her upper and lower extremists and she had negative Tinel's Sign and Phalen's Maneuver. (*Id*. at 738, 764.) The ALJ noted that Dr. Davis's opinions was not supported from the findings from Plaintiff's lumbar spine and left shoulder x-rays. (*Id*. at 31.)

Although the ALJ did not make a specific finding as to each of the factors in 20 C.F.R. §§

14

404.1527(c)(1) and 416.927, he specifically stated that he considered the opinion evidence of Plaintiff's treating physician. (*See id*. at 31.) His decision reflects consideration of the factors: he found that Dr. Davis was Plaintiff's treating physician, his opinion was inconsistent with the objective findings of her emergency room visits, and it was not supported by the findings of Plaintiff's lumber spine and left shoulder x-rays. (*See id*.) The regulations require only that the Commissioner "apply the factors and articulate good cause for the weight assigned to the treating source opinion." *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Brewer v. Colvin*, No. 3:11-CV-3188-N, 2013 WL 1949842, at *6 (N.D. Tex. Apr. 9, 2013), *adopted by* 2013 WL 1949858 (N.D. Tex. May 13, 2013); *Johnson v. Astrue*, No. 3:08-CV-1488-BD, 2010 WL 26469, at *4 (N.D. Tex. Jan. 4, 2010). "The ALJ need not recite each factor as a litany in every case." *Brewer*, 2013 WL 1949842, at *6 (citing *Johnson*, 2010 WL 26469, at *4).

Moreover, Dr. Davis's medical source statements were only "brief and conclusory" check-box questionnaires. (*See* docs. 12-1 at 663-68, 753-55.) The Fifth Circuit has recognized that opinions of treating physicians are not entitled to considerable weight when they are brief and conclusory and lack explanatory notes or supporting objective tests and examinations. *See Heck v. Colvin*, 674 F. App'x 411, 415 (5th Cir. 2017); *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011). The ALJ could therefore also discount Dr. Davis's opinions in the medical source statement for lacking "any substantive explanation." *See Foster*, 410 F. App'x at 833 (agreeing with the magistrate judge's conclusion that the ALJ did not err in assigning only little weight to a brief and conclusory questionnaire).

The ALJ's reasons for assigning only some weight to Dr. Davis's, combined with his review and analysis of the objective record, satisfy his duty under the regulations and constitute "good

cause" for affording only some weight to them. *See Brewer*, 2013 WL 1949842, at *6 (finding the ALJ's explanation as to why he did not give controlling weight to a treating physician's opinion constituted "good cause" even though he did not make a specific finding as to each of the factors set forth in 20 C.F.R. § 1527(c)(2)); *Johnson*, 2010 WL 26469, at *4 (same); *Hawkins v. Astrue*, No. 3:09-CV-2094-BD, 2011 WL 1107205, at *6 (N.D. Tex. March 25, 2011) (same); *Gomez v. Barnhart*, No. SA-03-CA-1285-XR, 2004 WL 2512801, at *2 (W.D. Tex. Nov. 5, 2004) (finding the ALJ complies with regulations if the resulting decision reflects that consideration was given to medical consultant's opinion). Remand is therefore not required.

## IV.  CONCLUSION

The Commissioner's decision is **AFFIRMED**.

**SO ORDERED**, on this 2nd day of October, 2020.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE